**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

S.O.L.; M.R.G., through her LGAL, D.R.D., for themselves and those similarly situated; and Legal Counsel for Youth and Children,

Plaintiffs,

vs.

WASHINGTON STATE DEPARTMENT OF CHILDREN, YOUTH & FAMILIES; TANA SENN, Secretary of the Washington State Department of Children, Youth & Families, in her official capacity; and STATE OF WASHINGTON,

Defendants.

No. 2:26-cv-01622-RSL

**FIRST AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

## NATURE OF THE CASE

1. Named Plaintiffs S.O.L. and M.R.G., acting on behalf of a class of immigrant youth[1] in the custody of Washington State's foster system, and the non-profit organization, Legal Counsel for Youth and Children ("LCYC") (collectively, "Plaintiffs") bring this civil rights action against the Washington State Department of Children, Youth, and Families ("DCYF") and its Secretary (collectively, "Defendants").

[1] The term "immigrant youth" as used throughout this Complaint and related filings means foreign-born children and youth who currently reside in the United States.



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

2. Many immigrant youth in DCYF custody fled dangerous conditions in their home countries. They escaped abuse, abandonment, neglect, human rights atrocities, trafficking, and other violence. Hoping for safety and protection, some immigrant youth instead have endured additional hardships in federal immigration detention, after being released to family members or other sponsors in Washington communities, and while in DCYF's custody. Others left their countries of birth at a young age and have spent their entire childhood in the United States, often unaware that they are undocumented by the time they are separated from their families and placed in DCYF's custody. Regardless of the path to Washington, these youth remain vulnerable without legal immigration status. They face bars to employment, healthcare, and many other vital rights and services, and are at constant risk of being detained or ordered removed from the country.

3. DCYF is responsible for acting in the best interests of all youth in its care. This responsibility includes addressing and safeguarding their immigration-related needs, which impact their health, welfare, permanency, and safety. This responsibility also entails determining whether a child needs immigration-related services, ensuring that DCYF considers immigration-related needs when helping the child plan for their future, monitoring and addressing any ongoing immigration removal proceedings, and helping a child access needed services.

4. Unfortunately, DCYF consistently fails to address the immigration-related needs of youth in its care. It does not timely identify youths' immigration status. It does not inform them or their guardians of their eligibility for various forms of immigration relief. It does not provide any immigration-related services to ensure that eligible youth have the opportunity to apply for immigration relief. And it does not monitor the status of ongoing immigration proceedings involving youth in its care, which leaves them at risk of deportation.



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

5. For these youth, the result is catastrophic: those otherwise legally entitled to immigration relief such as Special Immigrant Juvenile ("SIJ") classification and permanency in the United States are left without status or legal protection.

6. Nearly all immigrant youth without legal status in DCYF's custody are eligible for SIJ classification, which provides a pathway to citizenship. But without DCYF's support, they could lose their chance at this immigration relief forever because their eligibility window closes at age 21 in Washington. Due to DCYF's neglect, many youth face the real risk of deportation to a country that they do not know, to which they have little connection, and where they have no adequate protection or care. Such a result is completely at odds with DCYF's own vision: that "Washington state's youth grow up safe and healthy—thriving physically, emotionally, and academically, nurtured by family and community." RCW 43.216.015(1)(a).

7. This civil rights action seeks declaratory and prospective injunctive relief on behalf of S.O.L. and M.R.G.,[2] and LCYC, for violations of (1) the Due Process Clause of the Washington State Constitution (Article I, section 3) and (2) the Washington Law Against Discrimination (RCW 49.60.030).

8. Plaintiffs' requested relief includes requiring DCYF to establish and implement policies, procedures, and practices to (a) timely identify a youth's immigration status, (b) consider a youth's critical immigration-related needs in DCYF's case planning and transition services, (c) ensure that eligible youth are able to seek SIJ classification and other immigration relief in a timely manner; (d) provide support and assistance to youth facing potential removal, (e) train caseworkers to understand immigration issues facing youth in their care, and (f) ensure DCYF does not otherwise obstruct Class members from pursuing immigration relief.

---

[2] Due to the highly sensitive nature of the issues here, Named Plaintiffs have filed a motion for leave to proceed using pseudonymous initials.



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

9. Without these fundamental protections, immigrant youth in DCYF's care face the constant threat of deportation and little possibility of a safe and stable transition to adulthood.

**JURISDICTION AND VENUE**

10. Plaintiffs originally filed this case in King County Superior Court on May 4, 2026. On May 13, 2026, Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441(a).

11. Plaintiff's First Amended Complaint no longer alleges any federal causes of action. Plaintiffs assert only claims arising under the laws and Constitution of the State of Washington. As such, federal question subject matter jurisdiction no longer exists. 28 U.S.C. § 1331.

12. To the extent this Court determines federal subject matter jurisdiction no longer exists, Plaintiffs request that this action be remanded promptly to King County Superior Court. 28 U.S.C. §§ 1447(c) and 1367(c). That court has subject matter jurisdiction pursuant to article IV, section 6 of the Washington State Constitution, RCW 2.08.010, RCW 7.24.010, and RCW 7.40.010.

13. Venue was proper in this Court under 28 U.S.C. 1441(a) because this action was removed from King County Superior Court, where it was originally filed. Venue in King County Superior Court is proper pursuant to RCW 4.92.010 and RCW 4.12.020. Named Plaintiffs S.O.L. and M.R.G. reside in this county. Further, Organizational Plaintiff LCYC is headquartered in Seattle, the majority of LCYC's staff and clients reside in the county, and the majority of LCYC's services are based in this county. Defendant DCYF has multiple offices in this county, and Defendant Senn is sued in her official capacity and performs her official duties by and through offices within the county. In addition, a substantial part of the events and omissions giving rise to the claims herein occurred in this county.



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

## PARTIES

### I. NAMED PLAINTIFFS

#### A. Named Plaintiff S.O.L.

14. S.O.L. is an 18-year-old youth residing in King County, currently in the custody of DCYF.

15. S.O.L. was born in Guatemala and is a citizen of Guatemala.

16. In April 2023, S.O.L. entered the United States as an unaccompanied minor after experiencing significant trauma in Guatemala. Initially, she was taken into the custody of the Office of Refugee Resettlement and, in May 2023, was released to a relative in Pennsylvania where she suffered additional trauma. S.O.L. eventually moved to Washington to live with relatives, a situation that also became unsafe.

17. In May 2025, Washington DCYF investigated S.O.L.'s living situation, placed S.O.L. into protective custody, and served a petition alleging that S.O.L. is a dependent and neglected child.

18. In May 2025, the King County Superior Court, Juvenile Division entered a shelter care order finding that there is "no parent, guardian, or legal custodian to provide supervision or care [for S.O.L.]" and placing S.O.L. in the custody and under the supervision of DCYF in licensed foster care.

19. In June 2025, DCYF placed S.O.L. in a licensed foster care home in Kirkland, Washington, where she resided until April 2026. As of May 2026, she lives in Kenmore, Washington.

20. In July 2025, the King County Superior Court found S.O.L. dependent due to not having a parent or guardian capable of adequately caring for her, such that she was in circumstances that constitute a danger of substantial damage to her psychological or physical development. The court placed S.O.L. in the custody, control, and care of DCYF. The court subsequently entered an order extending the dependency and finding that S.O.L. is eligible for,



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

and agreed to participate in, extended foster care. To date, S.O.L. remains in the placement and care authority of DCYF.

21. DCYF's permanency plan for S.O.L. is independent living, which means she will be expected to transition to living on her own after she exits extended foster care.

22. S.O.L. wishes to remain in the United States and become a United States citizen. It is not in her best interests to return to Guatemala due to the violence and threats she faced there and ongoing safety concerns.

23. S.O.L. is currently finishing her final year of high school education.

24. Her most important goal is to bring her three-year-old son to the United States so they can be reunited and live together. She also wants to complete her high school education and then study engineering. Eventually she would like to work and be able to rent her own apartment. She enjoys photography and wants to pursue photography classes. S.O.L. has a supportive community in the United States and is safe and cared for here. In the United States, she can pursue her education and has access to medical and mental health resources that support her after experiencing so much trauma. She desires permanency in the United States, where she can live safely with her son.

25. Based on S.O.L.'s factual circumstances, she is eligible for SIJ classification. She meets the SIJ requirements because (1) she has been found dependent on the state by the juvenile court, (2) reunification with her parents is not viable since no parent or guardian is capable of adequately caring for her, and (3) it is not in her best interests to return to Guatemala.

26. Despite knowing that S.O.L. is a recent immigrant who does not yet have legal immigration status, DCYF, her legal guardian, has not addressed S.O.L.'s immigration-related needs and does not even have policies and procedures to do so.

27. DCYF has not informed S.O.L. about her immigration-related needs or her eligibility for SIJ classification. And it has not prepared the materials and filed the motion for



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

a predicate order for S.O.L. in her juvenile court proceedings despite having the necessary information and documents to file, which is a required step to initiate the SIJ process.

28. DCYF's ongoing failure to have policies and procedures to address the immigration-related needs of S.O.L. and other similarly situated children in DCYF custody places S.O.L. at ongoing risk of harm.

29. While S.O.L. lived with her foster family, S.O.L.'s foster parent spent many hours trying to connect S.O.L. to immigration representation because of DCYF's failures to do so. In early June 2025, S.O.L.'s dependency attorney also asked DCYF to support S.O.L. with her immigration needs. It was only after S.O.L. was in DCYF custody for months and after S.O.L.'s foster parent reached out that DCYF made an initial referral to Plaintiff LCYC to screen S.O.L. for SIJ eligibility. This referral process is not a guarantee that youth will obtain an assessment, as it is only based on Plaintiff LCYC's limited capacity as to whether it can offer staff time to conduct an assessment, for which it is not reimbursed or compensated by DCYF.

30. In December 2025, Plaintiff LCYC sent S.O.L. and her DCYF social worker a letter outlining S.O.L.'s potential immigration options, including SIJ. However, to this day, months later, DCYF has still taken no steps to file a motion for a SIJ predicate order. S.O.L. has thus been in DCYF care and custody since May 2025, a full year, with no assistance in filing this necessary motion.

31. Without obtaining immigration relief through SIJ classification and eventual legal permanent resident status, S.O.L. is ineligible for many public benefits, including forms of healthcare coverage, work authorization, federal student financial aid, and certain public assistance.

32. She also remains at risk of being detained or removed from the country and deported to danger. Her uncertain status makes her susceptible to further trauma, including trafficking.



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

33. Because she continues to lack legal status, S.O.L. could also be summoned to appear in immigration court for a removal hearing at any time, leaving her at substantial risk of detention and deportation. On information and belief, DCYF has taken no steps to monitor whether a removal case has been initiated against S.O.L. and has not relayed any information to S.O.L. or her previous foster parent, about whether there are any immigration court proceedings involving S.O.L. If S.O.L. is summoned to appear in immigration court, she risks missing hearings or being unprepared for a hearing, which could result in S.O.L.'s detention or removal from the country.

**B. Named Plaintiff M.R.G.**

34. M.R.G. is a 17-year-old youth residing in King County, currently in the custody of DCYF.

35. M.R.G. was born in Guatemala and is a citizen of Guatemala.

36. In or around 2016, M.R.G. entered the United States as an unaccompanied minor after years of living apart from her mother. She was initially placed in an Office of Refugee Resettlement shelter in Texas for about a month. She was then released to her mother in Washington. M.R.G.'s father, whom she never met, is deceased.

37. DCYF investigated multiple CPS reports involving abuse and neglect of M.R.G. starting in at least 2021, but did not file a petition requesting an out-of-home placement until January 2026.

38. In February 2026, the King County Superior Court, Juvenile Division entered a shelter care order finding that there is "no parent, guardian, or legal custodian to provide supervision or care [for M.R.G.]" and placing M.R.G. in the custody and under the supervision of DCYF, through placement with M.R.G.'s aunt.

39. A permanency plan for M.R.G. has not been established as of May 2026. She will likely be expected to transition to living on her own after she exits foster custody.



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

40. M.R.G. wishes to remain in the United States and become a United States citizen. It is not in her best interests to return to Guatemala as a young woman without parental protection due to ongoing safety concerns, and because she would have no home or means of support there. It is also not in her best interest to leave a country she has lived in for nearly ten years or to move away from her siblings and community support network. If M.R.G. returned to Guatemala, she would also be forced to choose between taking her United States citizen daughter from the only home she has ever known or being separated from her child.

41. M.R.G. is currently working and caring for her one-year-old daughter, who is a United States citizen.

42. M.R.G.'s most important goal is to continue raising her child. She dreams of becoming a nurse and having her own house one day. She would also like to travel. She fears the possibility of deportation.

43. Based on M.R.G.'s factual circumstances, she is eligible for SIJ classification. M.R.G. meets the SIJ requirements because she (1) has been placed in the custody of DCYF, (2) reunification with her parents is not viable as neither parent is able to adequately care for her, and (3) it is not in her best interests to return to Guatemala.

44. Despite knowledge that M.R.G. is an immigrant who does not yet have legal immigration status, DCYF, her legal guardian, fails to have policies and procedures to address M.R.G.'s immigration-related needs.

45. DCYF has not informed M.R.G. or her aunt, with whom she is placed, about her immigration-related needs or her eligibility for SIJ classification. DCYF has neither prepared the materials nor filed the motion for a SIJ predicate order in M.R.G.'s dependency proceedings despite having the necessary information and documents to file, which is a required step to initiate the SIJ process.

46. On information and belief, DCYF has taken no steps to monitor whether a removal case has been initiated against M.R.G. and has not relayed any information to M.R.G.



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

or her aunt about whether there are any immigration court proceedings involving M.R.G. If M.R.G. is summoned to appear in immigration court, she risks missing hearings or being unprepared for a hearing, which could result in M.R.G.'s detention or removal from the country.

47. In January 2026, M.R.G.'s dependency attorney asked DCYF to refer the youth for an immigration assessment. DCYF did not provide any information to LCYC regarding M.R.G.'s immigration status or case. M.R.G. herself was not in possession of any immigration documents and did not know any information about her status. On information and belief, DCYF never took affirmative steps to obtain any documentation regarding M.R.G.'s current legal status or immigration history. Consequently, LCYC had to submit a Freedom of Information Act ("FOIA") request for M.R.G.'s immigration records.

48. DCYF has failed to plan for M.R.G.'s urgent immigration needs. On information and belief DCYF has taken no steps to refer her to immigration counsel or retain counsel for her.

49. DCYF's ongoing failure to have policies and procedures to address the immigration-related needs of M.R.G. and other similarly situated children in DCYF custody places M.R.G. at ongoing risk of harm.

50. Without obtaining immigration relief through SIJ classification and eventual legal permanent resident status, M.R.G. is ineligible for many public benefits, including forms of healthcare coverage, work authorization, federal student financial aid, and certain public assistance.

51. Because she continues to lack legal status, M.R.G. could also be detained at any time, and is at substantial risk of deportation and potential separation from her young United States citizen daughter and siblings.

## II. ORGANIZATIONAL PLAINTIFF

52. Plaintiff LCYC is a non-profit organization providing legal services and advocacy for youth in Washington.



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

53. LCYC is headquartered in Seattle and receives mail and files taxes in King County. The majority of LCYC's staff and clients reside in the county, and the majority of LCYC's services are also based there.

54. LCYC's mission is to "protect the interests and safety of youth in Washington by advancing their legal rights . . . through direct legal representation, strong community partnerships, and systemic advocacy."[3]

55. LCYC provides legal services through four main program areas: child welfare, youth defense, youth and family immigration, and youth homelessness. LCYC offers holistic legal advocacy to its clients, helping them with a diverse set of legal needs, from housing placements to record sealing and protection orders. In 2025, LCYC represented over 300 youth in the care of DCYF, including youth who are eligible to apply for SIJ classification.

56. Serving SIJ-eligible youth is core to LCYC's mission to protect the interests and safety of youth by advancing their legal rights. Because DCYF fails to screen youth for immigration needs and to address those needs, LCYC screens clients to assess their immigration needs, provides immigration legal assessments to youth in DCYF's custody and advises other dependency and immigration attorneys and social workers in the state on immigration issues that may arise in dependency cases.

57. Since 2022, LCYC has devoted hundreds of hours to advocating for DCYF to institute a process to screen for immigrant youth in DCYF's care and provide them with immigration-related services before they age out of certain forms of immigration relief and permanently lose the chance to seek lawful status. LCYC's advocacy has involved regular meetings with DCYF as part of task forces, regular meetings with various other state officials and immigration advocates, drafting legislation to address DCYF's failures to screen immigrant youth for SIJ classification, and drafting a policy and screening tool for DCYF to implement,

---

[3] Legal Couns. for Youth & Child., *Mission*, https://lcycwa.org/mission-and-history [https://perma.cc/2JVM-8L5W] (last visited Apr. 30, 2026).



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

which has not been implemented for youth under 18. This advocacy has diverted LCYC staff and resources from individual and systemic advocacy in other LCYC program areas.

58. Through its work, LCYC has learned that DCYF has not assisted many SIJ-eligible immigrant youth in its custody with applying for SIJ classification. In most cases, the immigrant child or youth is unaware of their eligibility for SIJ classification altogether. LCYC knows of immigrant youth in DCYF's care who were close to aging out of foster custody without applying for SIJ classification, necessitating urgent action to have any chance of obtaining SIJ relief and all its benefits. To the extent LCYC has been aware of specific SIJ-eligible youth under DCYF's care, it has often been by pure luck, or through urgent calls from outside dependency or immigration attorneys throughout the state, and not because the state has systematically identified and assisted these immigrant youth with their immigration-related needs.

59. By failing to consider the critical immigration-related legal needs of the immigrant youth in its care, DCYF has shifted the burden of screening for SIJ-eligible youth to organizations like LCYC.

60. Because DCYF lacks policies, procedures, and practices to support immigrant youth, LCYC spends additional time and resources pursuing SIJ orders, preparing and filing related motions, and searching for immigration attorneys who are willing to represent youth in their SIJ applications.

61. Even when LCYC alerts DCYF to the urgency of a case, DCYF does not act to prioritize the child or youth's immigration needs, forcing LCYC to continually step in and ensure that the immigrant child or youth is able to pursue SIJ classification.

62. In addition, because of DCYF's failure to timely identify and refer immigrant youth, LCYC sometimes learns of a youth's need for immigration-related services only at the point when urgent action must be taken to protect the youth from aging out without SIJ



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

classification. These unpredictable and highly time-sensitive demands frustrate LCYC's efforts to plan for efficient staffing and other operational needs, further straining its resources.

63. LCYC receives funding from several sources, including private and public grants. LCYC does not currently receive ongoing funding to provide immigration services to youth in DCYF's custody. Because DCYF fails to screen and support immigrant youth, LCYC recently sought out private funding to expand its immigration services. LCYC is currently using time-limited private funding in order to provide assessments and, in emergency situations where DCYF has not adequately secured immigration counsel, appear in immigration removal hearings on behalf of youth in DCYF's care. In such situations, if LCYC does not appear, the child or youth is forced to appear alone, risking detention or deportation, or find a way to pay for private immigration counsel, even if they do not have the funds. LCYC expended significant time and resources to pursue this private funding through applications to foundations and appeals to private donors. If DCYF identified and referred SIJ-eligible youth, this funding could otherwise go to help other immigrant youth who LCYC serves who are not in DCYF's custody.

64. DCYF's failure to provide adequate safeguards to ensure that the immigration-related needs of SIJ-eligible youth in its care are met forces LCYC to divert its limited resources to screening for SIJ-eligible youth, providing comprehensive immigration assessments, fielding and responding to questions and referrals from outside dependency and immigration attorneys and social workers, providing trainings about SIJ, monitoring cases where DCYF has failed to act to refer a child or youth, and representing youth at their immigration removal hearings in emergencies at the expense of LCYC's other legal services.

## III. DEFENDANTS

65. Defendant DCYF is charged with ensuring that "Washington state's youth grow up safe and healthy—thriving physically, emotionally, and academically, nurtured by family and community." RCW 43.216.015(1)(a).



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

66. Defendant DCYF is charged with the care and custody of the Named Plaintiffs and putative Class members. DCYF is a public entity that receives state funding and federal funding under Titles IV-E and XIX of the Social Security Act to serve foster youth.

67. Defendant Tana Senn, sued in her official capacity, is Secretary of DCYF.

68. As the Secretary of DCYF, Defendant Senn "has the complete charge and supervisory powers over the department." RCW 43.216.025(3). She has the power to "manage the department in a flexible and intelligent manner as dictated by changing contemporary circumstances." *Id.* Defendant Senn is responsible for developing and administering or supervising the child welfare program activities.

69. DCYF has two child welfare offices that serve Seattle: one at 100 W Harrison St S Tower Ste 200, Seattle, WA 98119-4116 and another at 3600 S Graham St, Seattle, WA 98118-3034.

70. Defendant State of Washington, by and through its Governor, is responsible for supervising the conduct of Defendants Senn and DCYF. RCW 43.06.010(1).

## STATEMENT OF FACTS

### I. BACKGROUND

#### A. Special Immigrant Juvenile Classification

71. Nearly all immigrant youth without legal status in DCYF's custody are eligible for a form of federal immigration relief called Special Immigrant Juvenile ("SIJ") classification.

72. Congress created SIJ classification in 1990 to provide humanitarian protection for abused, neglected, or abandoned child immigrants, including those eligible for long-term foster care, and a pathway for them to obtain lawful permanent residence ("LPR") status and United States citizenship.[4]

[4] *See* 8 U.S.C. § 1101(a)(27)(J)(i); 8 C.F.R. § 204.11.



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

73. SIJ classification is available for a noncitizen child present in the United States who:

a. "has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;" 8 U.S.C. § 1101(a)(27)(J)(i);

b. "for whom it has been determined in administrative or judicial proceedings that it would not be in the [child's] best interest to be returned to the [child's] or parent's previous country of nationality or country of last habitual residence;" *id.* § 1101(a)(27)(J)(ii); and

c. "in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status[.]" *Id.* § 1101(a)(27)(J)(iii).

74. It is common practice for attorneys representing potentially SIJ-eligible youth in state juvenile court dependency or similar state proceedings to request findings and conclusions from the juvenile court regarding whether it would be in the child's best interest to be reunified with one or both of their parents and removed from the United States. The juvenile court judge typically makes such findings through their dependency order and sometimes a separate "special findings" order. The state court order with these findings is called a "SIJ Predicate Order."

75. In Washington, a child must obtain a SIJ Predicate Order from the juvenile court before turning 21 years old to obtain SIJ classification. Washington juvenile court jurisdiction ends once an individual reaches 21 years of age, except in certain circumstances generally inapplicable to youth in the Class. *See* RCW 13.34.030(2), 13.04.030. Given current LPR wait times, it is vital for DCYF to initiate the SIJ classification process as soon as possible because



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

it takes around four or five years for youth to obtain permanent resident status and the many resulting benefits.

76. Obtaining a SIJ Predicate Order is key for foster youth who do not have legal immigration status. Once a child has a SIJ Predicate Order, the child can file a SIJ petition with United States Citizenship and Immigration Services ("USCIS") seeking recognition as a Special Immigrant Juvenile. The sooner a SIJ petition is filed with USCIS, the sooner the child can apply for lawful permanent status, as the date a child can file for such status is based on the date they originally filed their SIJ petition. If a child does not file their SIJ petition before they turn 21, they lose the opportunity to obtain SIJ classification altogether and to take advantage of the vital benefits SIJ classification provides.

77. Once granted, SIJ classification may not be revoked except "on notice," 8 C.F.R. § 205.2, and upon the Government's compliance with a series of procedural safeguards: The Secretary of Homeland Security must find "good and sufficient cause" for revocation; the agency must provide notice of intent to revoke; and a child with SIJ classification must be given the opportunity to present evidence opposing revocation. *See* 8 U.S.C. § 1155; 8 C.F.R. § 205.2.[5]

78. A child with SIJ classification also has the right to appeal any adverse ruling, initially to the Associate Commissioner for Examinations, and then to the extent the child claims he or she "suffer[ed] legal wrong because of agency action," to the federal courts. *See* 8 C.F.R. § 205.2(d); 5 U.S.C. § 702.

---

[5] *See also* 7 U.S. Citizenship & Immigr. Servs., Policy Manual, Pt. F, *Chapter 7 - Special Immigrant Juveniles*, https://www.uscis.gov/policy-manual/volume-7-part-f-chapter-7 [https://perma.cc/UEB7-XG8Q].



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

79. Additionally, when an application is denied, the government officer is required to "explain in writing the specific reasons for denial." 8 C.F.R. § 103.3(a)(1)(i). Any unfavorable decision may be appealed. *Id.* § 103.3(a)(1)(ii); *id.* § 204.11(h).[6]

80. SIJ classification is not a discretionary benefit. It is granted to any eligible child or youth who properly completes the process. Thus, such youth have a constitutionally protected property interest in applying for it.

81. An approved SIJ petition confers further critical benefits. Once approved, youth with SIJ classification are " . . . deemed . . . to have been paroled into the United States [for purposes of adjustment of status]." 8 U.S.C. § 1255(h)(1). Moreover, the Immigration and Nationality Act ("INA") automatically exempts youth with SIJ classification from several grounds of inadmissibility that would otherwise prevent them from becoming lawful permanent residents. *See id.* § 1255(h)(2)(A). Additionally, some grounds of inadmissibility are waivable for SIJ youth under a special waiver standard. *See id.* § 1255(h)(2)(B). These exemptions and waivers of inadmissibility reflect Congress's intent that youth with SIJ classification are afforded humanitarian protection and are not considered priorities for immigration enforcement.[7]

82. One of the types of inadmissibility that is inapplicable to youth with SIJ classification is the public charge provision, which can apply to immigrants who are likely to

---

[6] *See also* 6 U.S. Citizenship & Immigr. Servs., Policy Manual, Pt. J, *Chapter 4 – Adjudication*, https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-4 [https://perma.cc/ZBQ3-RCTF]; *id.* at *Chapter 5 - Appeals, Motions to Reopen, and Motions to Reconsider*, https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-5 [https://perma.cc/3JF7-LAPK].

[7] *See, e.g.*, Special Immigrant Status for Alien Foster Children: Joint Hearings on S. 358, H.R. 672, H.R. 2448, H.R. 2646, and H.R. 4165 Before the Subcommittee on Immigration, Refugees and International Law of the House Committee of the Judiciary, and the Immigration Task Force of the House Education and Labor Committee, 101st Cong. 614 (1990) (statement of Mark Tajima, Legislative Analyst, Chief Administrator Officer, County of Los Angeles, CA) (Congress designed the SIJ program to shield immigrant youth because of "their age and the impracticability of deportation.")



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

become a public charge. 8 U.S.C. § 1182(a)(4). This is particularly important for youth in DCYF's custody because, without SIJ classification, the very fact that they have been abandoned, abused, or neglected and need state-provided care could contribute to a finding that they are inadmissible.

83. The benefits conferred by SIJ classification also include the ability to apply for legal permanent residency. 8 U.S.C. § 1255(h). LPR status is a stable legal status and pathway to citizenship. An LPR may live permanently in the United States without facing the risk of detention and removal. By contrast, people who lack legal status, including youth in DCYF's care, are at risk of being detained and placed in removal proceedings at any time.

84. The required wait time between approved SIJ classification and an approved LPR application has been around four years or more for all of 2025 and 2026. As of May 2026, the final action date for SIJ applicants from all countries is July 15, 2022, and the date for filing is January 1, 2023. This means that, to be eligible to apply for LPR status, an applicant must have had SIJ classification approved on or before July 14, 2022, to have their LPR application adjudicated. If similar timelines continue, as can be reasonably expected, youth who file for SIJ now will have to wait around four years before obtaining LPR status.

85. LPR status confers many benefits. An LPR may obtain lawful employment, qualify for federal student aid, and travel internationally and return to the United States. LPRs can work, purchase property, and pay taxes without fear of ICE enforcement. A new LPR may also become eligible for public benefits such as Supplemental Security Income (SSI), Supplemental Nutrition Assistance Program (SNAP), Temporary Assistance to Needy Families (TANF), and the Child Health Insurance Program (CHIP) after five years. At age 18 and after five years of being an LPR, a youth may also apply for naturalization and continue their path to United States citizenship. The sooner a child obtains SIJ classification, the sooner they can apply for adjustment of status, and if granted, the sooner the five-year period towards applying for citizenship begins. The sooner they are granted LPR status, the sooner the child will have



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

access to critical resources and benefits. Once they gain LPR status, they can contribute to Washington's economy through working and purchasing property without fear of immigration enforcement.

86. Recent changes in federal policy have made it even more important for a child without legal status to obtain SIJ classification as soon as possible so they can apply for LPR status as soon as possible. From 2022 through the first half of 2025, youth who were approved for SIJ classification were generally protected from deportation and allowed to apply for work authorization through a policy called deferred action while they waited their turn to apply for legal permanent residency.[8] But on June 6, 2025, USCIS issued Policy Alert PA-2025-07, which eliminated deferred action and the subsequent ability to apply for work authorization for youth with approved SIJ petitions.[9] In response to litigation about that policy, on April 10, 2026, USCIS issued Policy Alert PM-602-0198, which will eliminate automatic consideration for deferred action and the subsequent ability to apply for work authorization for children who apply after May 10, 2026. While these policies are contrary to Congress' intent—and, therefore, contrary to law—the increased risk of deportation creates even greater urgency for DCYF to ensure that immigrant youth are quickly screened and receive timely and critical immigration-related service.

---

[8] Federal agencies consider recipients of deferred action to be lawfully present in the United States while deferred action is effective, which protects recipients from deportation and allows them to work lawfully. *See* U.S. Citizenship & Immigr. Servs., *Policy Alert: Special Immigrant Juvenile Classification and Deferred Action* (Mar. 7, 2022), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20220307-SIJAndDeferredAction.pdf [https://perma.cc/3SE8-TFAX].

[9] As of filing, the June 2025 policy change is stayed by a federal judge and USCIS has enacted a subsequent policy that eliminates automatic deferred action. *See A.C.R. v. Noem*, No. 25-cv-3962, ECF No. 60 (E.D.N.Y. Nov. 19, 2025). The court's stay does not require USCIS to grant youth deferred action and as of May 2026, youth who are approved for SIJ classification are generally not receiving deferred action. This does not diminish the urgency of obtaining SIJ classification for eligible youth and children as quickly as possible, particularly as the future of deferred action remains uncertain and subject to change.



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

87. In addition to eliminating automatic consideration of deferred action and work authorization for SIJ-approved youth, the federal government has recently begun targeting SIJ-eligible and SIJ-approved youth for deportation, which is why it is so crucial for DCYF to connect youth with immigration counsel promptly. In recent months, ICE has arrested, detained, and deported numerous SIJ-eligible and SIJ-approved young people who do not have criminal records. The sooner youth obtain SIJ classification and become eligible to apply for LPR status, the sooner youth can live without fear of detention and deportation.

88. Given the wait times between an approved SIJ petition and LPR eligibility and current immigration enforcement priorities, a child who does not begin the process prior to age 17 will almost certainly reach the age of 21, and therefore age out of DCYF's custody, without the ability to legally work, without access to many public benefits, and subject to the constant risk of detention and deportation. This outcome denies the youth any reasonable possibility of beginning a stable adult life.

89. SIJ classification may be the only chance many immigrant youth have to obtain LPR status and to have access to the essential benefits it provides.

**B. The Washington Foster System**

90. Washington defines a dependent child as one who:

> "(a) Has been abandoned; (b) Is abused or neglected as defined in chapter 26.44 RCW by a person legally responsible for the care of the child; (c) Has no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development; or (d) Is receiving extended foster care services, as authorized by RCW 74.13.031." RCW 13.34.030(6).



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

91. If a juvenile court finds a child to be dependent, that court may grant custody of the child to DCYF to administer foster custody and other programs to provide care for the child. *See* RCW 74.13.031(9).[10]

92. In 2025 there were 4,706 children in foster custody in Washington.[11]

93. For children in DCYF's custody, "The department shall develop, administer, supervise, and monitor a coordinated and comprehensive plan that establishes, aids, and strengthens services for the protection and care of runaway, dependent, or neglected children." RCW 74.13.031(1).

94. The stated purpose of DCYF is to "safeguard, protect, and contribute to the welfare of the children of the state" by providing social services, setting standards for services and programs for children . . . [and] cooperating with other agencies in the delivery of services[.]" RCW 74.13.010; *see also* RCW 74.13.020(5)(b); RCW 74.13.031. DCYF must "ensur[e] that the child is progressing towards permanency." RCW 74.13.020(1); *see also* RCW 13.34.020 (the rights of the child include the right to a safe, stable, permanent home).

95. DCYF policy requires that all youth over the age of eleven have a transition plan that includes developing permanent connections, education, and job readiness.[12]

**C. Immigrant Youth in DCYF Custody**

96. On information and belief, many thousands of immigrant youth live in Washington State and there are hundreds of immigrant youth in DCYF's custody.

---

[10] DCYF has custody of children who have been placed in shelter care pursuant to RCW 13.34.060(1).

[11] *See* Wash. State Dep't of Child., Youth & Fams., *DCYF By the Numbers: Children in Out-of-Home Care by Placement Type* (Feb. 23, 2026), https://dcyf.wa.gov/sites/default/files/pubs/COMM_0267.pdf [https://perma.cc/3MNH-KQWL].

[12] Wash. State Dep't of Child., Youth & Fams., *Policy Guide § 4310. Transitioning Youth for Successful Adulthood* (eff. June 9, 2025) [hereinafter DCYF Policy Guide § 4310], https://dcyf.wa.gov/policies-and-procedures/4310-transitioning-youth-successful-adulthood [https://perma.cc/9GP2-59VL].



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

97. Since 2015, over 8,000 unaccompanied children have been released from the federal Office of Refugee Resettlement ("ORR") to sponsors, typically family members, in Washington.[13] Over 5,500 of those unaccompanied children have been released in Washington since 2021.[14]

98. On information and belief, DCYF does not track the number of immigrant youth in its custody.

99. Plaintiffs are aware of at least 60 immigrant youth between the ages of 18–20 who are currently in DCYF's custody. On information and belief, the number of immigrant children under 18 is significantly higher than that.

100. Immigrant youth in DCYF's custody who lack legal immigration status face the intersecting stressors of navigating the state's foster system and the federal immigration system. These youth typically have already fled abuse, neglect, and violence in their home country, may have experienced harms on their migration journey, and may have experienced the trauma of federal immigration custody. Once released to family members, these youth often face language and educational barriers. Some youth may not remember their journey to the United States and have no way of knowing that they need immigration services.

101. Immigrant youth in the foster system have also typically experienced the trauma of being separated from their families in the United States because of abuse, abandonment, or neglect. Some youth have entered foster custody due to a parent being deported.

102. Once in DCYF's custody, youth may experience additional trauma. The foster system often shuffles them between multiple out-of-home placements, depriving them of a critical sense of stability, permanency, and safety. Because they are excluded from federal

---

[13] U.S. Dep't of Health & Hum. Serv., Office of Refugee Settlement, *Unaccompanied Children Released to Sponsors By State*, https://www.acf.hhs.gov/orr/grant-funding/unaccompanied-children-released-sponsors-state [https://perma.cc/Z4J2-8YZR] (last visited Apr. 30, 2026).

[14] *Id.*



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

adoption assistance funding and are more likely to lack local family ties, immigrant youth with no legal immigration status are less likely to find permanent homes through guardianship or adoption and are therefore more likely to age out of foster custody without a home than non-immigrant youth.

## II. DCYF'S POLICIES, PROCEDURES, AND PRACTICES FAIL TO MEET THE NEEDS OF IMMIGRANT YOUTH IN DCYF CUSTODY AND DEPRIVE THEM OF THEIR PROTECTED INTEREST IN APPLYING FOR SIJ CLASSIFICATION.

### A. DCYF fails to consider youth's critical immigration-related legal needs in its policies, procedures, and practices.

103. DCYF is the designated agency responsible for administering federal funding through Titles IV-B and IV-E of the Social Security Act, the Child Abuse Prevention and Treatment Act, and the Chafee Foster Care Independence Program.

104. Federal law obligates any state receiving federal funding for foster custody and adoption assistance programs to have procedures to verify the citizenship or immigration status of each child in foster custody. 42 U.S.C. § 671(a)(27). As the designated agency, DCYF is legally required to keep track of the immigration status of children in its custody.

105. Pursuant to its policy and federal law, DCYF must track the immigration status of all youth in its care.[15] DCYF is required to determine citizenship and immigration status "early in the case" when taking custody of a child and must reconfirm immigration status prior

[15] *See* Wash. State Dep't of Child., Youth & Fams., *Policy Guide § 4305. Permanent and Concurrent Planning* (eff. July 1, 2024), https://dcyf.wa.gov/policies-and-procedures/4305-permanent-and-concurrent-planning [https://perma.cc/WXF5-ELDE] ("Citizenship and immigration status of the child or youth should be determined early in the case and should be re-confirmed prior to establishing a permanent plan per Notification to Foreign Consulates policy."); *see also* Wash. State Dep't of Child., Youth & Fams., *Policy Guide § 4211. Notification to Foreign Consulates* (eff. July 1, 2024), https://dcyf.wa.gov/child-welfare-division-policies-and-procedures/4211-notification-foreign-consulates [https://perma.cc/RQ5S-D9XJ] (Caseworkers must: "Assess the citizenship of a foreign country of a child or youth when the child or youth is placed in out-of-home care in a dependency proceeding.").



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

to establishing a permanent plan.[16] DCYF's policy manual also requires caseworkers to: develop a permanency plan; provide services and resources to address life skills, education, health, and employment; and track immigration status.[17] RCW 13.34.136 (DCYF must develop a permanency plan of care for children in custody). Despite these requirements, DCYF has no policies, procedures, or practices to ensure that these immigrant youth receive the necessary support to initiate the SIJ process in state court.

106. On information and belief, DCYF's caseworkers regularly fail to follow the policy requiring them to determine citizenship and immigration status.

107. Because youth in DCYF's custody have by definition been removed from their families, DCYF is generally the only responsible entity with the information and documents necessary to determine a child or youth's need for immigration assistance and take steps to obtain that assistance.

108. In January 2025, Governor Ferguson issued Executive Order 25-04 requiring DCYF to take actions to protect immigrant families and youth, making clear that the state intends for DCYF to provide support to immigrant youth in its custody.

109. However, concerningly, as of May 2025, DCYF has even *removed* language from its policies stating that immigrant youth had the right to "[b]e referred for legal services to determine whether an application for Special Immigrant Juvenile Status shall be submitted on [their] behalf to the Immigration and Naturalization Service."[18]

110. In May 2025, DCYF removed the right to "[b]e referred for legal services to determine whether an application for Special Immigrant Juvenile Status shall be submitted on [their] behalf" from a mandatory form used for youth aged 12 and older entitled "Rights of

---

[16] *Id.*

[17] *See* DCYF Policy Guide § 4310, *supra* note 12.

[18] Wash. State Dep't of Child., Youth & Fams., *Rights of Children and Youth in Foster Care* (last revised May 2025), https://dcyf.wa.gov/sites/default/files/forms/09-127.pdf [https://perma.cc/63MA-5HEQ].



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Youth in Foster Care."[19] This form required signatures from the child and their caseworker acknowledging that the caseworker had provided the form and explained the rights to the child.

111. Class members who were in DCYF's custody prior to May 2025 signed this document with their caseworkers acknowledging the right to SIJ referral. Unfortunately, despite this clearly-articulated policy, upon information and belief DCYF routinely failed to refer Class members who were in custody prior to May 2025 to legal services; thus, denying eligible youth their right.

112. At some point in May 2025, DCYF unilaterally deleted the right: "to [b]e referred for legal services to determine whether an application for Special Immigrant Juvenile Status shall be submitted on [their] behalf" from the Rights of Youth in Foster Care form. It did so without providing any notice or explanation to the youth who it had previously told they had this right.

<u>DCYF Form 09-127 (Rev. December 2019) – Image 1</u>

**As a child or youth in foster care, I have the right to:**

| **Safety and Well Being** |
| --- |
| • Be protected from abuse and neglect.<br>• Be treated fairly and equally, whatever my gender, gender identity, race, religion, ethnicity, national origin, disability, medical problems, or sexual orientation, and be addressed by the gender pronoun I prefer.<br>• Have my basic needs met (food, clothing, shelter, health care, and education).<br>• Participate in "normal" childhood activities (overnights with friends, after-school activities, sports, etc…).<br>• Have space for storing my clothing and belongings.<br>• Have the right for my case file and personal information to be confidential and kept in a secure place.<br>• Discussions of my information should only occur with designated individuals directly involved with my case plan.<br>• Be free from cruel, frightening, or unsafe discipline.<br>• Practice my own religion or not at all.<br>• Report abuse, neglect, exploitation, or violation of my personal rights without fear of punishment, interference, or coercion.<br>• Be referred for legal services to determine whether an application for Special Immigrant Juvenile Status shall be submitted on my behalf to the Immigration and Naturalization Service. |

[19] Policy Guide § 4310(3)(a)(ii)(B) states that caseworkers must review and sign the Rights of Children and Youth in Foster Care form with foster youth annually. DCYF Policy Guide § 4310, *supra* note 12.



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

DCYF Form 09-127 (Rev. May 2025) – Image 2

113. DCYF also lacks any policies, procedures, or practices to screen youth to determine eligibility for forms of immigration relief, including SIJ classification, that are necessary for immigrant youth's long-term protection, care, and permanency. On information and belief, DCYF does not routinely conduct such screenings, which impairs youth's ability to apply for SIJ classification.[20]

114. DCYF further lacks any policies, procedures, or practices to track the immigration removal cases of youth in its custody or relay information to youth about their cases, including whether they have received a summons to appear in immigration court or have been ordered removed. For youth who have been separated from family or other guardians,

**As a child or youth in foster care, I have the right to:**

Safety and Well Being

- Be protected from abuse and neglect.
- Be treated fairly and equally, whatever my gender, gender identity, race, religion, ethnicity, national origin, disability, medical problems, or sexual orientation, and be addressed by the gender pronoun I prefer.
- Have my basic needs met (food, clothing, shelter, health care, and education).
- Participate in "normal" childhood activities (overnights with friends, after-school activities, sports, etc.…)
- Have space for storing my clothing and belongings.
- Have the right for my case file and personal information to be confidential and kept in a secure place.
- Discussions of my information should only occur with designated individuals directly involved with my case plan.
- Be free from cruel, frightening, or unsafe discipline.
- Practice my own religion or not at all.
- Report abuse, neglect, exploitation, or violation of my personal rights without fear of punishment, interference, or coercion.

DCYF may be the only way for them to find out that they are at risk of deportation, and some of them may be in removal proceedings without even knowing it. On information and belief,

---

[20] DCYF maintains an internal non-public form that they developed at least in part in collaboration with Plaintiff LCYC to screen and refer immigrant youth in extended foster care (ages 18–21). On information and belief, this form is not regularly being used by caseworkers and does not exist for children under 18 in DCYF custody.



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

DCYF does not routinely track immigration removal cases, which impairs youth's ability to apply for SIJ classification.

115. In addition, DCYF lacks any policies, procedures, or practices to ensure that youth are able to submit required documents to immigration court or related agencies or appear for hearings and pursue immigration relief. As the children's legal guardian, DCYF, acting *in loco parentis* is uniquely positioned to access the necessary documents and information to pursue immigration relief and often has custody of the children during the only time period when they are able to start the SIJ classification process.

116. DCYF, as the party responsible for caring for youth in its custody, is also responsible for ensuring that any children in immigration proceedings attend their proceedings. On information and belief, DCYF does not routinely ensure youth can submit immigration documents or appear for immigration hearings, which impairs their ability to apply for SIJ classification. DCYF also lacks any policies, procedures, or practices to train DCYF attorneys about SIJ classification or to direct their attorneys to seek factual findings for SIJ classification or otherwise support a motion for such findings. And because many children in DCYF custody do not receive legal representation in their dependency cases, for many youth the DCYF attorney is the only lawyer who *could* seek factual findings in the state juvenile court that are necessary for the child to apply for SIJ classification.[21] Even for the children who do receive counsel through the Office of Civil Legal Aid, on information and belief, those attorneys are instructed not to address immigration issues. On information and belief, DCYF attorneys do not seek SIJ findings for eligible youth regardless of whether they are the only attorney available in the case or any other available attorney fails to do so, which impairs the child's ability to begin the SIJ process.

---

[21] Wash. State Office of Civil Legal Aid, *Children's Representation Program*, https://ocla.wa.gov/programs/childrens-representation-program [https://perma.cc/5VJS-GUEU] (last visited Apr. 30, 2026).



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

117. Finally, DCYF fails to provide adequate immigration assistance to youth in its custody who are transitioning into adulthood. DCYF does not maintain comprehensive guidelines for tracking or addressing removal proceedings or any other potential issues that may arise as children approach adulthood. DCYF also lacks publicly available policies, procedures, or practices to identify the youth in its care who are at the most imminent risk of being unable to apply for SIJ classification in an appropriate time frame, therefore delaying its benefits until well after they reach adulthood or even denying them the chance to ever apply for SIJ classification. Without DCYF taking the necessary steps, youth age out of care without any access to the critical information and assistance they need to succeed as adults.

118. By failing to create and implement policies, procedures, and practices to track removal cases of immigrant youth in its custody and by failing to provide adequate immigration assistance to youth in its custody who are transitioning into adulthood, DCYF erects barriers to these youth's ability to obtain SIJ classification and places them at great risk of deportation or other negative outcomes such as poverty, unemployment, exploitation, limited educational opportunities, and compromised mental and physical health.[22]

**B. DCYF fails to train caseworkers to understand basic immigration issues impacting youth in foster custody.**

119. States receiving federal funds under the John H. Chafee Foster Care Program for Successful Transition to Adulthood ("the Chafee program") must certify that they will provide training to help caseworkers "understand and address the issues confronting [youth] preparing for independent living[.]" 42 U.S.C. § 677(b)(3)(D).

[22] Defendants are acutely aware of the issues Plaintiffs raise in this Complaint. In fact, on July 25, 2025, Plaintiffs' counsel sent a request to negotiate resolution of legal violations of immigrant children's rights to Secretary Senn, setting forth many of these same issues. On August 26, 2025, Secretary Senn responded without addressing the request to negotiate a resolution.



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

120. Federal law also requires that youth aging out of foster custody be provided with certain essential documents, including an official or certified copy of, if applicable, their U.S. birth certificate, social security card, health insurance information, medical records, and driver's license or other identification card. 42 U.S.C. § 675(5)(I).

121. DCYF policy requires caseworkers to engage with youth in transition planning "to prepare youth for adulthood."[23] DCYF lacks any policies, procedures, or practices to ensure that caseworkers receive training to support immigrant youth in preparing for adulthood. Upon information and belief, DCYF fails to train or prepare its caseworkers for the challenges that immigrant youth face in their custody at all, let alone as they transition to adulthood.[24]

122. Upon information and belief, DCYF fails to train caseworkers to assess the options and potential consequences facing immigrant youth who do not timely apply for immigration benefits. Without basic training about the immigration-related needs of the youth in their care, caseworkers often fail to take steps to address immigration-related needs in a timely manner, if at all. DCYF's caseworkers also fail to advise foster parents on the challenges youth in their care face accessing needed services, such as health care, translation, and immigration-related legal services.

123. Upon information and belief, DCYF's caseworkers receive no training on the need to monitor potential immigration removal cases against youth in their care, which can result in youth missing hearings and ultimately being removed from the country.

---

[23] DCYF Policy Guide § 4310, *supra* note 12.

[24] *See* Wash. State Dep't of Child., Youth & Fams., *Training Requirements*, https://dcyf.wa.gov/services/early-learning-providers/qualifications/child-care-providers/training [https://perma.cc/AY87-U7UZ]; All. for Pro. Dev., Training, & Caregiver Excellence, *Core Trainings*, https://risewiththealliance.org/programs/development-for-professionals/development-for-professionals-social-work/development-for-professionals-social-work-core-trainings/ [https://perma.cc/ZLJ5-RD8L] (detailing mandatory DCYF caseworker training with no immigration training listed).



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

## III. DCYF'S ACTIONS AND INACTIONS SERIOUSLY HARM PLAINTIFFS.

### A. DCYF's actions and inactions seriously harm youth in the Class.

124. Because of the failures recited above, DCYF places SIJ-eligible youth at risk of losing their chance to apply for SIJ relief before aging out of DCYF's custody. Even for youth who are lucky enough to learn about their rights and find other assistance to apply for SIJ, DCYF's failures create a substantial risk that young people will age out of foster custody or extended foster care prior to being able to apply for LPR status.

125. DCYF's failures seriously harm youth in the Class, who face the constant risk of being detained and ordered deported without obtaining SIJ classification and other protections from deportation for which they might be eligible. The constant fear of detention and deportation only compounds the trauma these youth have already experienced by lacking legal immigration status and being in the foster system, risking further harm to their emotional and mental health.

126. Youth who exit foster custody without obtaining SIJ classification lose out on their most promising pathway to permanent status and lawful employment and ultimately, citizenship. Youth who started the SIJ process too late and thus exit care before they can apply for LPR status also face the same severe disadvantages during the pre-LPR period. Without the ability to work lawfully, these youth risk being unable to transition to independent adulthood. Lack of access to most public benefits further exacerbates the difficulty in obtaining basic necessities, such as food and stable housing. As a result, youth unable to obtain SIJ classification or in limbo prior to receiving LPR status face poverty, exploitation, dependency on abusive adults, trafficking, and limited socioeconomic mobility—the very harms SIJ classification was created to avoid and harms that DCYF should prevent.

127. The inability to access federal financial aid for higher education further risks thwarting the successful transition to adulthood for youth who age out of foster custody without obtaining SIJ classification and subsequent legal permanent resident status.



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

128. The fear of deportation, the stresses of being involved in the immigration system, and the potential barriers to accessing medical coverage after leaving DCYF's custody negatively impact the physical health of youth without legal status as well.

129. If ultimately deported, these youth face even graver risks of being removed to a country where they lack family or community connections and potentially face dangerous and life-threatening conditions. A failure to attain SIJ classification and ultimately LPR status has life altering consequences for these youth.

130. By failing to meet the needs of SIJ-eligible youth, DCYF exacerbates all of these serious risks, undermining the goals of the child welfare system: safety, permanency, and well-being. DCYF works against its own mission, causing severe harm to the very population they are statutorily mandated to protect.

131. DCYF is often the only entity responsible for these youth and in possession of the documents and information needed to begin the SIJ process before the eligibility window closes. Therefore, DCYF's failures functionally block youth from the legal status they need to live stable lives and successfully transition to adulthood in the United States.

**B. DCYF's actions and inactions harm LCYC.**

132. Because of the failures alleged above, DCYF also frustrates LCYC's mission to "protect the interests and safety of youth in Washington by advancing their legal rights . . . through direct legal representation, strong community partnerships, and systemic advocacy." DCYF's failures force LCYC to divert its limited resources toward addressing the time-sensitive immigration-related needs of SIJ-eligible youth in DCYF's custody. The resources spent addressing foster youth's immigration-related needs impair LCYC's ability to provide other legal services to Washington youth, such as representation in dependency and juvenile court, immigration services for youth not in DCYF's custody, and civil legal services for homeless youth.



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

133. Because DCYF lacks policies, procedures, and practices; fails to engage in effective case planning; and lacks caseworker training on SIJ eligibility, LCYC often does not learn about a SIJ-eligible youth in DCYF's custody until their immigration-related needs are urgent. This crisis of youth at risk of aging out of SIJ eligibility or facing a removal proceeding hearing forces LCYC to divert organizational resources to address an emergency that DCYF could have prevented.

134. Even when LCYC learns about the urgent immigration-related needs of youth in DCYF's care and seeks to provide legal assistance, DCYF creates additional obstacles by failing to refer youth promptly to an immigration attorney, and sometimes by failing to supply essential documents like birth certificates, resulting in lengthy delays in time-sensitive cases. To overcome this lack of cooperation, LCYC is forced to expend additional resources to procure the materials and services necessary to prepare a SIJ predicate order, reach out to immigration attorneys to request that they represent youth, and track the youth's proceedings to ensure that they ultimately submit their SIJ application before their eligibility is lost.

135. DCYF's failure to screen and identify foreign-born youth in its custody for SIJ eligibility also hampers LCYC's ability to provide systemic advocacy for Washington's most vulnerable youth. Without knowing the true scope of the unmet immigration needs of youth in DCYF's custody, LCYC is unable to effectively advocate for these youth pursuant to its mission and coordinate competent representation with other partners.

136. DCYF's actions and inactions harm LCYC's ability to serve SIJ-eligible youth, as well as other clients with urgent needs, and divert LCYC's time and resources away from other core program areas.

## CLASS ALLEGATIONS

137. Named Plaintiffs S.O.L. and M.R.G. bring this action as a class action pursuant to Washington Court Rules 23(a) and (b)(2).



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

138. Named Plaintiffs bring this action on behalf of themselves and the following Class for injunctive relief, based on violations of the Due Process Clause of the Washington State Constitution (Article I, section 3) and the Washington Law Against Discrimination (RCW 49.60.030): All immigrant youth in DCYF's custody who are eligible to apply for SIJ classification. Named Plaintiffs are members of and represent this Class.

139. The deficiencies in the care and services provided to youth without legal status described above, and the resulting risks to the youth in the Class, arise from Defendants' policies, procedures, patterns, and/or practices, including the following:

a. Defendants' failure to timely identify youth's immigration status for purposes of meeting their immigration-related needs;

b. Defendants' failure to consider youth's critical immigration-related needs in DCYF's case planning and transition services;

c. Defendants' failure to ensure eligible youth are able to apply for SIJ classification and other immigration relief in a timely manner;

d. Defendants' failure to provide support and assistance to youth facing potential removal; and

e. Defendants' failure to train caseworkers to understand immigration issues facing youth in their care.

140. As a result, the youth in the Class are subject to serious harm and risk of harm, including the following:

a. Their immigration-related needs are not identified in a timely manner;

b. They cannot take steps to secure lawful status to which they are entitled because their access to information, documents, legal resources, and transportation is controlled and limited by DCYF;

c. They are at high risk for trafficking, exploitation, and homelessness because of their immigration status;



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

d. As a result of aging out of DCYF's custody without immigration documentation, they cannot work lawfully or obtain public benefits and healthcare to which they would otherwise be entitled; and

e. They are under constant threat of detention and removal to unsafe and potentially life-threatening conditions and the resulting separation from their families and communities in the United States.

141. The Class is sufficiently numerous to make joinder impracticable. The exact number of members of the proposed Class is unknown and not available to Plaintiffs at this time, but, upon information and belief, the number exceeds 100 youth. Other factors that make joinder impracticable include the fluid nature of the Class, the geographically diverse Class members, the limited financial resources of Class members, the unknown identity of future Class members, and Defendants' discretion with respect to service provision and placement decisions.

142. Numerous questions of fact and law are common to the claims of Named Plaintiffs and members of the proposed Class, including:

a. Whether Defendants' failure to have policies, procedures, and practices, for addressing youth's critical immigration-related needs and for ensuring SIJ-eligible youth are able to apply for SIJ classification violates Article I, section 3 of the Washington State Constitution;

b. Whether Defendants' failure to have policies, procedures, and practices for addressing youth's critical immigration-related needs denies immigrant youth the right to permanency, safety, and stability that DCYF affords to United States citizen youth in violation of the Washington Law Against Discrimination by discriminating against foreign-born youth on the basis of immigration status and citizenship; and



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

c. Whether Named Plaintiffs and the Class members are entitled to declaratory and injunctive relief to vindicate their statutory and constitutional rights.

143. The claims that Named Plaintiffs raise are typical of those of the Class, as each Class member's claim would arise from the same course of events, and each Class member would make similar legal arguments to prove Defendants' liability. The remedies sought by Named Plaintiffs are the same remedies that would benefit the Class: an injunction requiring Defendants to establish and implement policies, procedures, and practices to ensure immigrant youth in DCYF's custody are timely identified, receive case planning and transitional services addressing their immigration-related needs, are able to seek SIJ classification and other immigration relief in a timely manner, receive support and assistance when facing potential removal, and are supported by caseworkers with adequate training on immigration issues.

144. Named Plaintiffs will fairly and adequately represent the interests of the Class. There are no conflicts among the Named Plaintiffs and any members of the Class. The Litigation Guardian Ad Litem is dedicated to representing the best interests of the Named Plaintiff.

145. The counsel below have extensive experience in litigating civil rights and class action lawsuits, including those involving the rights of youth in foster custody and immigrants lacking legal status.

146. Defendants have acted or refused to act on grounds that generally apply to the Class, and injunctive and declaratory relief are appropriate for the Class as a whole.



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

**(Violations of the Washington State Constitution (Article I, section 3) by Depriving Plaintiffs of Their Procedural Due Process Right to Timely Submission and Adjudication of SIJ Applications - Asserted on Behalf of Named Plaintiffs, the Putative Class, and LCYC Against All Defendants)**

147. Plaintiffs incorporate each and every allegation of the Complaint as if fully set forth below.

148. Article I, section 3 of the Washington State Constitution prohibits Defendants from depriving any person of life, liberty, or property without due process of law.

149. Named Plaintiffs and other members of the Class have a property interest, protected by the Due Process Clause, in applying for nondiscretionary immigration benefits for which they are eligible, including SIJ classification, and in the timely adjudication of their applications for SIJ classification.

150. The foregoing actions and inactions of Defendants constitute policies, patterns, practices, and/or customs that deprive Named Plaintiffs and members of the Class of this property interest without due process of law. Defendants' actions and inactions prevent members of the Class from timely seeking SIJ classification. Defendants' actions and inactions result in members of the Class permanently losing their chance to obtain SIJ benefits or significantly delaying their access to these benefits without due process to determine their entitlement to SIJ classification.

151. Defendants' actions and inactions described above violate Article I, section 3 of the Washington State Constitution by depriving the Named Plaintiffs and the members of the Class of their constitutional rights.

152. Defendants' actions and inactions have caused and will continue to cause LCYC to expend resources to respond rapidly and with minimal warning to urgent immigration-related



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

needs that Defendant should have identified and planned for, including by LCYC helping youth seek SIJ classification and representing them in removal proceeding hearings on an emergency basis when DCYF did not adequately secure counsel.

## SECOND CAUSE OF ACTION

**(Violations of the Washington Law Against Discrimination RCW 49.60.030 - Asserted on Behalf of the Named Plaintiffs and Putative Class Against All Defendants)**

153. Plaintiffs incorporate each and every allegation of the Complaint as if fully set forth below.

154. The Washington Law Against Discrimination prohibits discrimination based on immigration status and citizenship and preserves "[t]he right to be free from discrimination." RCW 49.60.030(1).

155. "The right to be free from discrimination" includes "[t]he right to the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement." *Id.* § 49.60.030(1)(b)*; accord* RCW 49.60.215.

156. The Washington Law Against Discrimination applies to DCYF in its provision of services and placements to youth in its custody. DCYF licenses, supervises, and operates numerous forms of public accommodation and facilities where Named Plaintiffs have received services, including DCYF's local child welfare offices, group and residential care programs, and other out-of-home placements.

157. DCYF discriminates against Named Plaintiffs and the Putative Class on the basis of immigration status and citizenship by failing to fulfill its statutory duties to ensure permanency, safety, and stability for immigrant youth in its care. DCYF must "develop, administer, supervise, and monitor a coordinated and comprehensive plan that establishes, aids, and strengthens services for the protection and care [of children in DCYF's care]" and must ensure "the right of a child to basic nurturing includes the right to a safe, stable, and permanent



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

home." RCW 74.13.031; RCW 13.34.020; see also RCW 13.34.136 (requiring DCYF to develop and update a permanency plan of care). DCYF violates its obligations to ensure that immigrant youth receive a coordinated and comprehensive plan and a safe, stable, and permanent home, as compared to United States citizen youth, in DCYF's care.

158. As a result of DCYF's discrimination, Named Plaintiffs and the Putative Class are not (a) timely identified as needing support due to their immigration status, (b) provided case planning and transition services that address their critical immigration-related needs, (c) screened to determine eligibility for forms of immigration relief, including SIJ classification, in a timely manner; (d) provided support and assistance in immigration court or related agencies with their immigration cases; or (e) provided information or support with their immigration removal cases. As a result, they face increased risks of instability, deportation, and homelessness.



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

## PRAYER FOR RELIEF

1. WHEREFORE, Plaintiffs respectfully request that the Court:

   a. Assert subject matter jurisdiction over this action;

   b. Order that the Named Plaintiffs may maintain this action as a class action pursuant to Washington Court Rules 23(a) and (b)(2) and appoint the undersigned as class counsel;

   c. Declare unlawful, under RCW 7.24.010, Defendants' conduct as alleged herein as a violation of the rights of Plaintiffs and the Class members;

   d. Grant preliminary and/or permanent injunctive relief requiring Defendants to:

      i. Establish and implement policies, procedures, and practices to timely identify youth's immigration status;

      ii. Establish and implement policies, procedures and practices to consider youth's critical immigration-related needs in DCYF's case planning and transition services;

      iii. Establish and implement policies, procedures, and practices to ensure eligible youth are able to seek SIJ classification and other immigration relief in a timely manner;

      iv. Establish and implement policies, procedures, and practices to address the needs of youth facing potential removal;

      v. Establish and implement policies, procedures, and practices to ensure that DCYF's caseworkers receive adequate training on immigration issues impacting youth in DCYF's care; and

      vi. Establish and implement policies, procedures, and practices to ensure DCYF does not otherwise obstruct Class members from pursuing immigration relief.



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

e. Retain jurisdiction over Defendants until the Court is satisfied that Defendants have implemented and sustained this injunctive relief;

f. Award reasonable attorneys' fees, expenses, and costs that the Plaintiffs incur in connection with this action; and

g. Grant any other relief that the Court may deem just and proper.

Dated: May 22, 2026

Respectfully submitted,

/s/ Alexander G. Dietz
Alexander G. Dietz, WSBA No. 54842
PFAU COCHRAN VERTETIS AMALA, PLLC
909 A Street, Suite 700
Tacoma, WA 98402
253-777-0799
adietz@pcvalaw.com

CHILDREN'S RIGHTS
Leecia Welch, WSBA No. 26590
2021 Fillmore Street
San Francisco, CA 94115
415-602-5202
lwelch@childrensrights.org

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I certify that I have on this day filed the foregoing document using the CM/ECF system, which will send a notice of electronic filing to the following counsel of record:

Alix R. Campbell
David R. Sheaffer
Rebekah Fletcher
Assistant Attorneys General
alix.campbell@atg.wa.gov
david.sheaffer@atg.wa.gov
rebekah.fletcher@atg.wa.gov

Attorneys for Defendants

Dated: May 22, 2026

*/s/ Alexander G. Dietz*

Attorney for Plaintiffs



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654